## OLIVE LANCOURE *vs.* PETER DUPRE.

Argued by appellant, submitted on brief by respondent, April 12, 1893. Decided May 19, 1893.

**Measure of Damages on Vendor's Failure to Convey.**

In an action by a vendee for a breach of contract to sell real property because of the inability of the vendor to convey good title, the former is entitled to recover of the vendor interest upon all moneys paid on the contract from the date of payment, whether the same was paid as principal or as interest; and is also entitled to recover such sums as he may have paid as taxes upon the premises, with interest from the dates of payment.

**Same—Improvements by Vendee.**

The general rule in such cases is that the vendee may also recover the value of improvements put on the land by him in good faith, in so far as such improvements may, at the time of the rescission of the contract, permanently enhance the value of the land.

**Rental Value to be Offset.**

As against these items of damage the vendor is entitled to offset the rental value of the premises, to be estimated without the improvements placed thereon by the vendee.

Appeal by plaintiff, Olive Lancoure, from a judgment of the District Court of Ramsey County, *Charles E. Otis,* J., entered January 11, 1893.

On February 14, 1877, the defendant, Peter Dupre, made a contract with plaintiff whereby he agreed to sell and convey to her, by warranty deed, six acres in the southeast quarter of the northwest quarter of section twenty-three (23), T. 31, R. 22, in Anoka County, being the premises conveyed by Peter Porter and wife to Joseph Nadeau, June 8, 1874, and by Nadeau to defendant April 4, 1876. Plaintiff took possession of the property, paid him $300, and gave him her note for $300 more, payable on or before November 4, 1886, with interest annually. The deed was to be made when she paid the note. She paid the interest, $21 a year, to November 4, 1881, and the taxes on the property until 1885. Defendant represented that he had a good title, and that Nadeau's wife had executed the

deed with her husband. But she had not, and has always refused, and defendant knew it. In the Fall of 1882, plaintiff tendered payment of her note and demanded a deed, and informed defendant that she desired to build a house on the property. He told her to go on and build the house, and he would reimburse her for any loss in so doing, in case a good title to the land was not procured and conveyed to her. In reliance thereon, plaintiff built the house at an expense of $800. She has since frequently tendered payment of her note, and demanded a conveyance, but defendant has never been able to induce Nadeau's wife to join with her husband in a deed of the property. In March, 1886, plaintiff rescinded the contract, abandoned the property, and in September, 1886, brought this action to recover the purchase money, interest and taxes paid, and interest on each payment and the value of the house and interest thereon, less the value of the use of the land while she occupied it. The place of trial was afterwards changed by consent from Anoka to Ramsey County.

On the trial before the court without a jury, in December, 1889, plaintiff was allowed for principal, taxes and interest paid, and was also allowed interest on the $300 paid, but on nothing else. She was not allowed anything for the house. She was charged $50 a year for nine years' use of the land. Findings were made and judgment entered that she recover the balance, $177.19, with interest from March 1, 1886; and that her note for $300 be surrendered on depositing in court her quitclaim deed to defendant of the property. In a memorandum filed with the findings, the trial court said:

"Conceding the plaintiff could rescind the contract and recover damages, it seems to me the measure thereof must be the fair value of the improvements at time of rescission. Until then she sustained no loss from defendant's failure to procure and pass to her a valid title, and when she abandoned the premises, her loss was just what the improvements would have been fairly worth to her or to anyone retaining possession of the property, that is, what they were then worth to the property. But plaintiff has made her complaint and tried her case upon an entirely different theory, and there is nothing in the pleadings or proofs from which the court can determine such value. The fact that they cost a certain sum four

years before, would not warrant such finding, especially in view of the fact that neither party considered such issue in the case."

*Warner, Richardson & Lawrence,* for appellant.

Effectual exercise of the right to rescind creates a right to restitution and the defendant became obliged to refund to plaintiff all the monies with interest thereon which she had paid to him, and all the monies with interest thereon which she had expended for taxes or for improvements. It was not essential to defendant's obligation to restore the monies so expended for taxes and repairs that he had realized or ever would realize any actual benefit or advantage from the expenditure, because in such a case the vendor may not own the land. We cannot account for the decision below with respect to the cost of the repairs, except by supposing that for the time being, the court below mistook this for an action based on the contract to recover compensation for the loss of plaintiff's bargain.

Before plaintiff began her improvements, she concluded to complete payment of the purchase money and obtain the conveyance. In attempting to do this, she found that defendant was not able to perform. What was to be done? The defendant practically said to her, "I can and I will get power to carry out my contract. You go right ahead and make these proposed repairs. I am good for it." Good for what? These words were not technical. They were to be interpreted by the light of the circumstances attending their use. *Crone* v. *Braun,* 23 Minn. 239. Both parties knew what these circumstances were. The plain import of defendant's language was that the plaintiff was to cause these repairs to be made and that she was to pay for them, and that all this was to be done on defendant's personal credit and at his sole risk, precisely as if plaintiff was his mere agent, employed to attend to the making of certain proposed improvements upon his land. *Edwards* v. *McLeay,* 2 Swans. 287; *Gibson* v. *D'Este,* 2 Y. & C. 542; *Farris* v. *Ware,* 60 Me. 482; *King's Heirs* v. *Thompson,* 9 Pet. 204; *Driggs* v. *Dwight,* 17 Wend. 71; *Kelley* v. *West,* 36 Minn. 520; *Patrick* v. *Roach,* 21 Tex. 251; *Thouvenin* v. *Lea,* 26 Tex. 612; *Gibert* v. *Peteler,* 38 N. Y. 165; *McClure* v. *Lewis,* 72 Mo. 314; *Harris* v. *Harris,* 70 Pa. St. 170; *Leffingwell* v. *Elliott,* 10 Pick. 204; *Johnson* v.

*Meyers' Ex'r*, 34 Mo. 255; *Palmer* v. *March*, 34 Minn. 127; *Bennett* v. *Phelps*, 12 Minn. 326; *Murphin* v. *Scovell*, 41 Minn. 262; 44 Minn. 530.

The cost of the building was *prima facie* evidence of its value. *Norton* v. *Willis*, 73 Me. 580; *Angell* v. *Hopkins*, 79 Cal. 181; *Seigneuret* v. *Fahey*, 27 Minn. 60; *Pittsburgh, C. & St. L. Ry. Co.* v. *Hixon*, 110 Ind. 225; *Jones* v. *Morgan*, 90 N. Y. 4; *McKenzie* v. *Bacon*, 41 La. An. 6.

The court erred in allowing the defendant full rent for use of the premises, while throwing out plaintiff's entire claim on account of the improvements. The theory of the decision was such as to cast on plaintiff all the loss from usual wear and tear and effect of the elements, and at the same time made her pay the defendant therefor. Because full rent presumably includes payment for such wear, tear, and depreciation.

It seems that the court, upon consideration, came to the conclusion that the value of the improvements at the time of rescission was the measure of defendant's liability on that account; and then, finding nothing in the pleadings or evidence bearing on such value, except said cost, concluded to allow full rent to defendant, and nothing on that account to the plaintiff. It is submitted that it was the duty of the court below, under such circumstances, to have declared the rights of the parties, and to have directed a reference under the judgment. Such always has been the course in such cases, and the Code provides for it. 1878 G. S. ch. 66, § 247, subd. 2; *Madison Ave. Bap. Church* v. *Olive St. Bap. Church*, 73 N. Y. 82; *Barnett* v. *Higgins*, 4 Dana, 565; *Worrall* v. *Munn*, 38 N. Y. 137; *Ashton* v. *Thompson*, 28 Minn. 330.

*C. D. & Thos. D. O'Brien*, for respondent.

Although the complaint is voluminous and contains numerous unnecessary statements and allegations, the action after all was merely an action for money upon an alleged breach of contract. This contract was the bond executed by the defendant, and it controls the rights of the parties, and limits their remedies. The liability of the defendant is limited, first, to the amount of the bond, and, second, to the damages sustained by the plaintiff upon a breach

of its condition; and the plaintiff's claim cannot be expanded by any averments in the complaint beyond the situation fixed by the parties in their written contract. There was no necessity for a rescission of the contract upon her part. The bond was the bond of the defendant. A failure to comply with its terms and conditions upon his part constituted a breach, upon which occurrence the plaintiff had a right of action upon the bond for her damages, and nothing else. The bond cannot be excluded from consideration in this case, for without it, she had no cause of action.

Plaintiff's entire payments, including taxes and interest upon such payments, aggregated $627.19, while the rental value of the land is found by the court during such period to have been $450, leaving an overpayment by her of only $177.19, for which, with interest, she had judgment.

COLLINS, J. The defendant, in the year 1877, sold to plaintiff the tract of land described in the complaint, and executed and delivered to her his bond for a deed. One half of the agreed purchase price was paid by plaintiff about the time of the purchase. Plaintiff went into possession, and remained until March 1, 1886, when she elected to rescind the contract, abandoned the premises, and brought this action to recover damages because of the failure and inability of defendant to convey a good title in accordance with the conditions of his bond. In this instrument it was stated that the premises to be conveyed were the same deeded by one Porter and his wife to Joseph Nadeau in the year 1874, and by said Nadeau and his wife to defendant, April 4, 1876. At the date of conveyance to defendant, Nadeau was a married man, as defendant well knew, but his wife at that time refused, and she has ever since refused, to join in the deed, or to consent in writing to the same. By reason of this refusal, defendant's title to the premises was and has remained defective, subject to the inchoate interest and estate of Nadeau's wife known as the "dower right." In 1882, the plaintiff, desiring to make substantial improvements on the land, offered to pay the balance of the purchase price to defendant, providing he would convey a good title to her, but, discovering the defect before mentioned, she refused to accept his deed solely because of such defect. Thereupon the defendant assured her that he could

and would secure a further and sufficient conveyance from Nadeau and his wife, so as to perfect his own title, and would convey the same to plaintiff, and that she could safely make the proposed improvements. At this time the balance of the purchase price was not due, although plaintiff, at her option, could pay it. Relying upon the statement in the bond as to the source of title, and representations that the defendant was able to convey a good title to the land, the plaintiff was induced to purchase; and, relying upon his further statements and representations that he could and would perfect his defective title, as well as upon the original statements and representations, the plaintiff placed betterments upon the land in 1882 at a *cost* of $800, as was found by the court. She had also, while in possession, paid the annual interest on account of the deferred purchase-price payment, and had also paid the taxes as they fell due for several years.

The defendant was unable and has refused to perfect his title by deed or otherwise, and in March, 1886, as before stated, plaintiff took such steps as were essential to rescind the contract to purchase, and brought this action. This appeal is by plaintiff from a judgment entered in conformity with the findings of fact and conclusions of law of the trial court.

When ordering judgment for plaintiff, the court below recognized her right to recover the amount paid as part of the purchase price, with interest from the date of payment, and to recover the amounts she had paid as interest upon the deferred payment, and to recover the amounts paid for taxes. As against those sums it offset the rental value of the premises while plaintiff held possession. No interest was allowed her upon the amounts paid as interest on the deferred purchase-price payment, nor upon the sums annually paid as taxes, nor was interest allowed to defendant upon the amounts determined to be due to him as annual rental. Nor was anything awarded to plaintiff as compensation for the improvements placed upon the premises in 1882. The refusal of the court to allow for improvements was based on the fact that plaintiff made no effort to prove the value or worth of the same to the land at the time of the rescission. Their cost four years earlier had been established, but there was nothing in the pleadings or proof from which their worth to the land, when plaintiff elected to rescind and abandoned

the premises, or, rather, in what amount these improvements had enhanced the value of the land, could be determined. The correctness of this view of the law is the principal question before us, the other questions being in reference to the right of plaintiff to recover interest upon the amounts paid as interest and for taxes, and whether defendant should be allowed interest upon the annual rental value of the land.

Where there is a rescission of a land contract because the seller is unable or refuses to convey a good title, the purchaser should certainly be put in *statu quo,* as nearly as possible. Literal restoration seems impossible when the contract has been acted upon, payments made, possession enjoyed, and permanent improvements placed on the premises. When the damages are capable of measurement, the doctrine requiring that there be awarded to the injured party compensation equivalent to the actual damages he has sustained is not, in a case like this, at all inequitable. Indeed, it is obvious that in no other manner could justice be done to the plaintiff; and it was said in *Erickson* v. *Bennet,* 39 Minn. 326, (40 N. W. Rep. 157,) that, generally, where one contracts to convey real estate, knowing that he has no title, and cannot perform his contract, the recovery is not limited by the technical rule of damages usually applicable in actions upon the covenants in a deed of conveyance, but that it is measured by the broader rule of compensation generally applied in cases of breach of contract and of fraud. The statements and representations as to title and source of title, and his ability to convey, before mentioned, were relied upon by plaintiff, and induced her to purchase, and in good faith to make permanent improvements. They were false, and defendant knew, or should have known, of their falsity. They amounted to a fraud upon the plaintiff. The defendant cannot complain if he be required to compensate her and make good the loss. But the amount which plaintiff lost because deprived of her improvements was not what they cost in 1882, but was what they were worth to the land when she was compelled to remove from the same; that is, the amount the land was permanently enhanced in value thereby. To illustrate: The value of the dwelling house rebuilt by the plaintiff could not be increased or decreased in value by defendant's course. Had he complied with his contract, the

house would have been worth no more and no less than it was when he refused to perform. In either event its present value would have been the same. Had the plaintiff lost it by the elements on the day she gave it up her loss would have been its value, not what it cost. That she was deprived of it through defendant's fault, and not by the elements, cannot augment the amount of her loss, nor increase the compensation she should receive therefor. If, then, the true measure of damages in such cases be compensation, the trial court did not err when refusing to allow to plaintiff the cost of her betterments.

The generally accepted and proper rule, in our opinion, where there is a rescission of a contract for the sale of land for want of a perfect title, is that improvements put on the land in good faith by the purchaser must be accounted for, in so far as they may at the time of the rescission permanently enhance the value of the land. *Winters* v. *Elliott*, 1 Lea, 676; *Mason* v. *Lawing*, 10 Lea, 264. See, also, *Davis* v. *Strobridge*, 44 Mich. 157, (6 N. W. Rep. 205;) *Sheard* v. *Welburn*, 67 Mich. 387, (34 N. W. Rep. 716;) *Harris* v. *Harris*, 70 Pa. St. 170.

But counsel for appellant argue that the theory of the rule is such as to cast upon the plaintiff all of the loss from the effect of the elements upon the improvements, and at the same time she is adjudged liable to defendant for the rental value therefor, because full rent presumably includes payment for depreciation in value through ordinary wear and tear. If there is anything in the record to justify the claim that, when determining the rental value of the premises allowed defendant, the court below included the rental value of plaintiff's improvements, there would be force in the argument, but there is not. The court should have fixed the rental value of the land alone,—the property the defendant sold, agreed to convey, but did not. The law requires the purchaser to account to the seller for the rental value of the premises sold, and of which the former has had possession. We cannot assume that the trial court improperly assessed the rental value under a misconception of the law, for there is nothing in the record to indicate it, and the presumption is the other way. Again, the rental value per annum was fixed by the court at the same for each of the five years preceding the making of the improvements as it was for

each of the years subsequent thereto, and this tends to demonstrate that the value of the use of the improvements was not included.

The plaintiff was entitled to recover interest upon the sums paid as interest upon the deferred payment, and also upon the amounts paid for taxes. This must follow from the fact that she can recover the amount of the payments; and as against these various sums the defendant can offset and recover the annual rentals with interest from the end of each year of plaintiff's possession.

There could be no serious obstacle in the way of a modification of the judgment so as to allow to the respective parties interest as above indicated, but, in our opinion, justice requires that the case be remanded for a new trial. It is so ordered.

Judgment reversed.

VANDERBURGH, J., took no part.

(Opinion published 55 N. W. Rep. 129.)