RODSTROM v. STRUM.

1. SPECIFIC PERFORMANCE—ORAL CONTRACT TO CONVEY LAND—EVIDENCE.

In suit for specific performance of an alleged oral contract to convey land to plaintiff and her husband, statement of ownership in tax bills and the public notice given by the recording of a deed constitute evidence, though not conclusive, that plaintiff knew defendant was not carrying out the alleged agreement prior to the death of her husband by causing title to be vested jointly in himself and deceased and where bill of complaint and testimony also show beyond question that defendant retained some interest in the property, plaintiff's claim is rendered so indefinite and uncertain that it cannot be enforced specifically.

2. SAME—EVIDENCE.

Specific performance will not be granted except when the right to assert relief is established by testimony which is clear and convincing.

Appeal from Jackson; Simpson (John), J. Submitted June 3, 1942. (Docket No. 38, Calendar No. 41,961.) Decided September 8, 1942. Rehearing denied October 21, 1942.

, Bill by Augusta F. Rodstrom against Nels F. Strum for specific performance of an alleged oral contract to convey land. Decree for plaintiff. Defendant appeals. Reversed.

*Haskell L. Nichols,* for plaintiff.

*Norman E. Leslie (John S. Denton,* of counsel), for defendant.

BUTZEL, J. Augusta F. Rodstrom, plaintiff, is the widow of Otto Rodstrom, deceased, who was a

brother of Nels F. Strum, defendant, the latter evidently having dropped the first syllable from his surname.   He was the owner of a farm of 156 acres or thereabouts.   On or about May 1, 1928, and for a considerable period prior thereto, plaintiff and her husband were the caretakers of a large apartment building in Chicago, Illinois.   They were earning $248 per month, and also were given the use of an apartment without any extra charge for heat, light, gas, water or refrigerator.   Plaintiff claims that defendant visited them about May 1, 1928, and stated that he wanted plaintiff and her husband to take possession of the farm.   What the agreement was in respect to the final disposition of the farm is the issue in this case.   There is no question but that plaintiff and her husband gave up their position in Chicago, moved on the farm, worked hard and spent considerable sums in improving the land and buildings, and made some payments on the mortgage and for taxes for certain years.   It is not claimed that plaintiff or her husband paid any rent during the 11 years prior to the death of plaintiff's husband, nor during the two years since then.   There is testimony that occasionally some farm produce was given to defendant, the value of which was almost inconsequential, but defendant claims that he never received anything for which he did not pay.

The trial judge found that defendant had agreed to give a joint deed to plaintiff and her husband and upon the death of her husband she was entitled to a deed to the property.   While plaintiff is sick and old and undoubtedly both she and her husband gave of their labor and capital in running the farm, and with some understanding or belief that the title to the farm would become vested in plaintiff or her husband, or both of them, should defendant predecease both of them, defendant calls attention to

the fact that if the total amount expended by plaintiff and her husband during the many years of occupancy of the farm were divided into monthly payments, it would be far less than the rental value thereof. He also points out that he continued to expend a considerable amount for improvements, taxes, insurance, mortgage payments, while plaintiff and her husband were in occupancy. The question in the case, however, is, Was there an agreement sufficiently definite in regard to transfer of the title so that plaintiff is entitled to the specific performance asked for?

In her original bill of complaint, plaintiff alleged that she and her husband paid a consideration to defendant in operating the farm and placing $3,000 of personal property thereon so that defendant could show such personal property thereon in obtaining a new mortgage loan from the Federal land bank in the amount of $2,900 in order to pay off a past-due mortgage loan on a part of the property on which there was approximately $2,535 unpaid. The latter sum is still due on the Federal land bank loan notwithstanding payments made by both plaintiff's decedent and defendant. Further consideration set up in the original bill of complaint was that plaintiff and her husband were to furnish defendant with farm produce and that defendant did receive a large amount of dairy products for his own use. In the amended bill of complaint, she claimed that, though in fact defendant had conveyed to a third party, who immediately conveyed to defendant and plaintiff's husband as joint tenants, ''plaintiff and her deceased husband had been *told* by defendant, that they were to be the sole owners of said farm *upon the death of defendant.*'' (Italics ours.)

Plaintiff testified that in April, 1928, in Chicago, defendant told them that he was giving them the

farm. Plaintiff, however, when asked, "When?" replied: "At any time, and we were supposed to get it at his death." When again asked when he was going to give it to them, she stated, "some time during his lifetime," but, when asked, "Maybe his lifetime and maybe at death, is that right?" she answered, "Yes." She further stated that she "applied during his lifetime," and that defendant stated he had made a will; that there was nothing definite about when defendant was to give them the deed, that sometime either during defendant's lifetime or after his death, plaintiff and her husband were to have the farm. In March, 1935, defendant by proper instruments did vest the title in himself and decedent. Plaintiff's name was not included in the deed. The court's statement in his opinion that defendant said that he had made a joint deed to plaintiff and her husband in 1937, but refused to show them the deed, although he waved a deed before them claiming that it was a joint deed to plaintiff and her husband, is based solely upon the testimony of plaintiff. In her amended bill of complaint she shows that defendant deeded to a third party who then executed a joint deed to defendant and her husband on March 2, 1935, and that it was recorded three days later in the office of the register of deeds. There is no claim that plaintiff had seen this deed but the tax bills were made out to defendant and decedent, plaintiff's name not being mentioned therein.

Plaintiff in her testimony gives a different version in which she states that in 1935 defendant wanted the taxes paid and plaintiff and her husband told him that they would not pay the taxes on property that they could not show partly belonged to them, whereupon defendant told them to pay the taxes and that he would give them a deed for a part of

the farm if they would continue to work the same and pay the farm loan and taxes. The statement of ownership in tax bills and the public notice given by the recording of a deed are facts which have probative, though not conclusive, value in showing that plaintiff knew the real situation. She believed in 1935 or thereabouts that defendant was not carrying out his alleged agreement and, had she taken prompt action, the court would have had the benefit of her husband's testimony. Defendant did vest the title jointly in his brother and himself. While plaintiff claims that defendant should have transferred the title to herself and her husband, now deceased, the bill of complaint and testimony indicate beyond any question that defendant during his lifetime retained at least some interest in the property. In any event, the claim of plaintiff is so indefinite and uncertain that it cannot be enforced specifically. Specific performance will not be granted except when the right to assert relief is established by testimony which is clear and convincing. *Sieg* v. *Sendelbach,* 256 Mich. 456; *Van Houten* v. *Vorce,* 259 Mich. 545; *Groening* v. *McCambridge,* 282 Mich. 135; *Tincknell* v. *Ward,* 285 Mich. 47. See, also, 2 Restatement, Contracts, p. 673, § 370.

The decree is reversed and one will be entered dismissing the bill of complaint. Costs to defendant.

CHANDLER, C. J., and BOYLES, NORTH, STARR, BUSHNELL, and SHARPE, JJ., concurred. WIEST, J., did not sit.